UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

CARLOS RODRIGUEZ,

                                    Plaintiffs,      **COMPLAINT AND**
              -against-                              **JURY DEMAND**

THE CITY OF NEW YORK, POLICE OFFICER SULLY
CEBALLOS, Shield #25135, POLICE OFFICER
THOMAS TURNER, Shield #22387

                                    Defendants.

-------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which plaintiff seeks relief for the violation of his rights

secured by 42 USC §1983 and the Fourth and Fourteenth Amendments to the United States

Constitution, and the laws and Constitution of the State of New York.

2.     The claims arise from an incident on March 29, 2011, in which Officers of the New

York City Police Department ("NYPD"), acting under color of state law, intentionally and

willfully arrested plaintiff, falsely claiming that he knowingly attempted to possess stolen

property.

3.     Plaintiff seeks monetary damages (special, compensatory, and punitive) against

defendants, as well as an award of costs and attorneys' fees, and such other and further relief as

the Court deems just and proper.

## JURISDICTION

4.     This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the Fourth

and Fourteenth Amendments to the United States Constitution.

5.     Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and the events occurred within, the boundaries of the Eastern District of New York.

**PARTIES**

6.     Plaintiff is a legal resident of the United States, and resident of Kings County, New York.

7.     The City of New York is a municipal corporation organized under the laws of the State of New York.

8.     All others individual defendants ("the officers") are employees of the NYPD, and are sued in their individual capacities.

9.     At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

**FACTUAL ALLEGATIONS**

10.    On March 29, 2011, plaintiff was having breakfast in a local store and cafe when an defendant Police Officer Sully Ceballos, acting undercover, entered the location and urged plaintiff to buy a phone and a GPS device from her.  She begged plaintiff to buy the property, claiming, among other things, that she was a domestic violence victim, and that she needed the money for milk for her babies.

11.    Plaintiff gave Ceballos some money, but said he did not need the property. Nevertheless, Ceballos insisted that she would leave the property with plaintiff, and left the store.

12.    At no point did Ceballos tell plaintiff or suggest that the property she attempted to sell him was stolen.

13.   After plaintiff gave Ceballos money, Ceballos left the store, and police officers entered and arrested plaintiff.

14.   Ceballos and Police Officer Thomas Turner drafted and submitted a criminal court complaint, falsely claiming that Ceballos told plaintiff that the property was stolen, and that plaintiff bought the property from her.

**DAMAGES**

15.   As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a.   Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

    b.   Physical and emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

    c.   Loss of liberty.

**FIRST CAUSE OF ACTION**
(42 U.S.C. § 1983)

16.   The above paragraphs are here incorporated by reference.

17.   Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from unreasonable search and seizure and to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiff under 42 U.S.C. §1983.

18.   Defendants falsely arrested plaintiff, and failed to intervene in each other's obviously illegal actions.

19.   Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL LIABILITY)

20.   The above paragraphs are here incorporated by reference.

21.   The City is liable for the damages suffered by plaintiff as a result of the conduct of its employees, agents, and servants, in that, after learning of its employees' violation of plaintiffs' constitutional rights, it failed to remedy the wrong; it has created policies and customs under which unconstitutional practices occurred and allowed such policies or customs to continue, and it has been grossly negligent in managing subordinates who caused the unlawful conditions and events.

22.   The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

23.   The aforesaid event was not an isolated incident.  The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of its police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.  Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist, abdicating any effective oversight of its police employees.

24.   For example, the Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice

4

that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB often closes out complaints where the alleged victims, who have pending criminal actions against them, do not cooperate in the investigation, even where the CCRB is able to investigate the allegations independent of the alleged victims. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

25. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, a power which the commissioner has exercised.

26. The Internal Affairs Department of the NYPD takes cases in a completely arbitrary and selective manner, often times interviewing complainants on the record once, before declining the case and forwarding it to the CCRB, who will refuse to go forward with a complaint unless they do their own preliminary interview with the complainant. Thus, the City erects multiple barriers to moving a case forward, before any further investigation can proceed.

27. Further, the City has no formal procedures to notify individual officers or their

5

supervisors of unfavorable judicial review of their conduct. There are many judicial findings of unlawful searches and seizures and incredible police testimony every year that simply never get reported to the offending officers' superiors. Without such notification, improper search and seizure practices and incredible testimony by the same officers is repeated.

28.   Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. These conditions persist today.

29.   The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

30.   Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.


WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.   In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.   Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.    Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this

action; and

D.    Granting such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:    Brooklyn, New York
          March 15, 2013

TO:   New York City                          Very truly yours,
      Corporation Counsel Office
      100 Church Street, 4th floor
      New York, NY  10007
                                             Stoll, Glickman & Bellina, LLP
                                             By: Andrew B. Stoll (AS8808)
                                             Attorney for Plaintiff
                                             475 Atlantic Avenue
                                             Brooklyn, NY  11217
                                             (718) 852-3710
                                             astoll@stollglickman.com